UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

UNITED STATES OF AMERICA,

        Plaintiff,

v.

EUGENE CHEN, M.D.; LAS VEGAS ANESTHESIA, INC.; AND EUGENE CHEN, M.D., P.C.;

        Defendants.

2:04-cv-00859-PMP-PAL

O R D E R

On June 21, 2004, Plaintiff United States commenced this action under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733. Plaintiff United States alleges that from January 1, 1999 until the filing of Plaintiff's Complaint, Defendants[1] (hereinafter referred to as "Dr. Chen") performed services for Medicare beneficiaries, but submitted false claims for reimbursement to Medicare contractors.

Presently before this Court is Defendant Eugene Chen's ("Dr. Chen") Motion for Summary Judgment (Doc.#23), filed on September 6, 2005. Plaintiff United States of America filed an Opposition to Defendant's Motion for Summary Judgment (Doc. #24) on September 23, 2005. Defendant Dr. Chen filed a Reply (Doc. #28) on October 7, 2005.

\\\

\\\

---

[1] Dr. Chen is a board certified anesthesiologist practicing in Las Vegas since 1991 and is a resident agent for Defendant Las Vegas Anesthesia, Inc. Defendant Eugene Chen, M.D., P.C. is the corporate entity through which Dr. Chen practices medicine.

## I. BACKGROUND

Dr. Chen has developed an expertise in the area of critical care medicine. (Def.'s Mot. for Summ. J., Ex. A at 1.) Since 1993, referring physicians often request Dr. Chen to place various catheters, such as Swan-Ganz catheters and central venous catheters. Id. The placement of a central venous catheter is a minor surgical procedure commonly performed by anesthesiologists, surgeons, and physicians. (Opp'n to Def.'s Mot. for Summ. J., Ex. 10 at 3.) Referring physicians frequently request that Dr. Chen place catheters for very ill patient who require catheters immediately. (Def.'s Mot. for Summ. J., Ex. A at 1, 2.) Typically, doctors request Dr. Chen because of his availability to perform the procedure on short notice. (Opp'n to Def.'s Mot. for Summ. J., Ex. 10 at 3.)

When Dr. Chen performs a procedure for a Medicare patient, he bills Medicare under Part B, a government health insurance program covering medical services for the elderly. Erringer v. Thompson, 371 F.3d 625, 627 (9th Cir. 2004). Medicare reimburses medical services that are "reasonable and necessary" for the diagnosis and treatment of illness or injury. (Opp'n to Def.'s Mot. for Summ. J., Ex. 5 at 1.) Congress has delegated the authority to manage Medicare to the Secretary of the United States Department of Health and Human Services ("HHS"), who administers the program through the Center for Medicare and Medicaid Services ("CMS"). United States ex rel. Walker v. R & F Props. of Lake County, Inc., 433 F.3d 1349, 1351 (11th Cir. 2005). CMS contracts with private insurance carriers, known as fiscal intermediaries ("FI's"),[2] throughout the country who administer and pay claims within their regions. Id.

CMS publishes manuals instructing the medical community about how to properly bill Medicare for medical services rendered. Id. at 1352. These manuals include

---

[2] A fiscal intermediary is "[a]n entity that has a contract with CMS to determine and make Medicare payments for Part A or Part B benefits payable on a cost basis and to perform other related functions." 42 C.F.R. § 400.202.

2

the Provider Reimbursement Manual directed to healthcare providers. Id. Additionally, Medicare provides guidance to healthcare providers through Medicare bulletins and newsletters further describing necessary procedures to bill Medicare. Id. at 1356-57.

To be reimbursed for services, healthcare providers submit Form HCFA 1500, the standard Medicare billing document. (Opp'n to Def.'s Mot. for Summ. J., Ex. 9.) CMS regulations require Form HCFA 1500 to include a description of the service or procedure performed by using the American Medical Association procedure codes known as the Physicians' Current Procedural Terminology ("CPT Codes"). 45 C.F.R. § 162.1002(a)(5). CPT Codes specify Medicare's reimbursement for the medical service rendered. Id. Additionally, healthcare providers assign diagnosis codes describing the patient's medical condition. 42 C.F.R. § 424.32(a)(2). For example, along with a procedure treating "acute renal failure," a doctor designates a diagnosis code of 584 which defines acute renal failure. (Opp'n to Def.'s Mot. for Summ. J., Ex. 11 at 3, Ex. 10 at 3.)

Medicare distinguishes between Evaluation and Management Services ("E&M") and procedures. (Opp'n to Def.'s Mot. for Summ. J., Ex. 6 at 1-2.) Medicare recognizes that certain procedures include elements of E&M care that occur before and after the actual procedure. Id. These pre- and post-procedural elements are addressed by the Global Surgical Policy which requires doctors to "bill a single fee for all their services usually associated with a surgical procedure." Medicare Program; National Standardization of "Global Surgery Policy," 56 Fed. Reg. 699, 700 (Jan. 8, 1991). For certain minor surgical procedures, such as the placement of a central venous catheter, the CPT Code includes any E&M service associated with the surgery. (Opp'n to Def.'s Mot. for Summ. J., Ex. 6 at 1-2.) E&M includes the pre- and post-operative tasks of taking a patient's history, physical examination, and medical decision making. (Def.'s Mot. for Summ. J., Ex. E at 1.)

Medicare defines a consultation as "a type of service provided by a physician whose opinion or advice regarding evaluation and/or management of a specific problem is

3

requested by another physician." (Opp'n to Def.'s Mot. for Summ. J., Ex. 3 at 1.) There are four subcategories of consultations: office, initial inpatient, follow-up inpatient, and confirmatory. (Opp'n to Def.'s Mot. for Summ. J., Ex. 3 at 1.) Medicare billing codes set forth different levels of these consultations graded by complexity and the average time physicians normally spend on the consultation. (Opp'n to Def.'s Mot. for Summ. J., Ex. 3 at 3.) CPT Code 99255 is the highest code in the initial inpatient consultation series 99251-99255. (Id. at 3.) The time physicians typically spend on these consultations range from a low of twenty minutes for CPT Code 99251 to a high of 110 minutes for CPT Code 99255. (Opp'n to Def.'s Mot. for Summ. J., Ex. 3 at 3.) Similarly, CPT Code 99263 is the highest code in the series 99261-99263. (Opp'n to Def.'s Mot. for Summ. J., Ex. 3 at 3.) Medicare requires that the consultant prepare a "report of his/her findings which is provided to the referring physician for the physician's use in treatment of the patient." (Opp'n to Def.'s Mot. for Summ. J., Ex. 4 at 2.)

Medicare's Global Surgical Policy denies reimbursement for a consultation performed by the same physician on the same patient on the same day as the procedure.[3] (Opp'n to Def.'s Mot. for Summ. J., Ex. 6 at 1.) However, Medicare permits a physician to bill for a separate consultation on the same patient on the same day if it is a "significant, separately identifiable" E&M service which is "above and beyond the usual care associated with the procedure." (Id.) To bill for a separate consultation, a physician may attach a "-25 modifier" to the CPT Code for the consultation. (Id.) The -25 modifier identifies the consultation as an E&M service that is over and above the normal procedure related to pre-operative and post-operative work. (Id.) Without the -25 modifier, the Medicare system

---

[3] Congress intended that "[f]or minor surgeries and endoscopic procedures, no payment generally will be made for a visit on the same day in addition to the surgical procedure or endoscopy procedure unless a documented, separately identifiable service is furnished . . . ." 56 Fed. Reg. 59,502, 513-14 (Nov. 25, 1991).

4

automatically rejects a consultation performed by the same doctor, on the same patient, and billed on the same day as the procedure. 42 U.S.C. § 1395w-4(c)(1)(A). In its November 1998 Bulletin, Medicare offers examples of the correct use of the -25 modifier. (Def.'s Mot. for Summ. J., Ex. I at 1.) Medicare gives the following example of a "significant, separately identifiable" E&M service: "The cardiologist sees an established patient with new onset of chest pain (CPT 99215) and then performs a cardiac catheterization. In order to be reimbursed, the 99215 should include a -25 modifier when billed with the cardiac catheterization codes." Id.

Primarily at issue in this case is Dr. Chen's practice of billing both for the catheterization procedure and for patient consultations he performed on the same patient on the same day as the catheterization. During the period from January 1, 1999 to the present, Dr. Chen billed Medicare through his billing company which his wife ran. (Def.'s Mot. for Summ. J., Ex. A at 4.) Dr. Chen billed Medicare for thousands of procedures under CPT Code 36489 for placement of a central venous catheter. (Opp'n to Def.'s Mot. for Summ. J., Ex. 1.) Generally, Dr. Chen also billed for a consultation, primarily using CPT Code 99255 (initial consultation) or CPT Code 99263 (follow up consultation). (Id., Exs. 1, 2.) Of these graded consultation levels, Dr. Chen billed most frequently the highest level of complexity and received the greatest reimbursement. (Opp'n to Def.'s Mot. for Summ. J., Ex. 2.) To bill Medicare for a procedure Dr. Chen performed, Dr. Chen provided information to his billing company, including the CPT and diagnosis codes. (Opp'n to Def.'s Mot. for Summ. J., Ex. 21 at 36-39.) Then his billing company submitted Form HCFA 1500, billing Medicare through the FI. Id.

In 2000 and 2002, Medicare reviewed Dr. Chen's billing of three specific claims for consultations involving three patients, Newmark, Witz, and Etebar. (Def.'s Mot. for Summ. J., Exs. NN-YY.) Each of these three reviews addressed Dr. Chen's billing for a consultation. Id.

In the Newmark case, Dr. Chen billed Medicare for CPT Code 99255-25 for services performed on November 13, 2000. (Def.'s Mot. for Summ. J., Ex. NN.) Medicare selected this billing for a prepayment audit and Dr. Chen submitted his consultation report. Id. Medicare reviewed Dr. Chen's report and paid the claim finding the submitted documentation supported the claim. Id.

In the Witz case, Dr. Chen billed for services performed on June 13, 2002. (Def.'s Mot. for Summ. J., Ex. UU.) The deceased patient's husband complained that Dr. Chen never performed the billed services. Id. Dr. Chen billed for several procedures, including insertion of a heart catheter and insertion of an emergency airway, and also billed for an initial consultation using CPT Code 99255-25. Id. The husband claimed he was present with his wife and he never saw Dr. Chen perform these services. Id. Upon receiving information from Dr. Chen and the hospital, Medicare was satisfied that Dr. Chen performed the services and Medicare paid the claim.[4] (Def.'s Mot. for Summ. J., Ex. YY2.)

In the Etebar case, Medicare denied payment to Dr. Chen for billing a consultation under CPT Code 99263 (a follow-up inpatient consultation). (Def.'s Mot. for Summ. J., Ex. QQ.) Dr. Chen billed CPT Code 99263 and CPT Code 36489 (procedure for placement of a central venous catheter) on the same day. (Def.'s Mot. for Summ. J., Ex. SS.) Medicare denied payment under the Global Surgical Policy because Medicare automatically rejects a consultation billed on the same day as a related procedure. (Id. at 2.) Dr. Chen appealed the denial and requested a change in the code to add the -57 modifier to permit billing for a consultation which leads to the initial decision to perform surgery. Id. Medicare denied payment explaining that the -57 modifier was inappropriate because the

---

[4] In its review, the Western Integrity Center noted that although this claim was paid, the only place where it states a consultation was requested was on Dr. Chen's consultation report. (Def's. Mot. for Summ. J., Ex. J at 3.) The medical records show Dr. Lampert requested an intubation, a Swan Ganz insertion, and an arterial line insertion. (Def's. Mot. for Summ. J., Ex. J.)

referring doctor made the surgery decision.  Id.  However, the Hearing Officer found that an "appropriate means of treatment" was determined during the inpatient follow-up consultation and changed the modifier to -25, for a "significant, separately identifiable evaluation and management service" performed on the same day as the procedure.  Id.  With this new modifier, Medicare paid for the consultation.  Id.

In 2003, Medicare received a tip from an informant alleging Dr. Chen was "billing for procedure code 99255 when a lesser code is being rendered." (Opp'n to Def.'s Mot. for Summ. J., Ex. 12 at 1.)  The informant, who worked in Dr. Chen's billing office, alleged Dr. Chen told his billing company always to bill for the highest level initial consultation using CPT Code 99255.  Id.  Medicare initiated an investigation of Dr. Chen's billing practices through the Western Integrity Center ("WIC"), which specializes in audits and reviews of practitioners' billing practices.  Id.

The review covered the twelve-month period from April 1, 2002 to March 31, 2003.  Id.  Of over 800 consultation claims, most were for the highest level codes, 99255 and 99263.  (Opp'n to Def.'s Mot. for Summ. J., Ex. 3 at 3.)  Dr. Chen received his greatest reimbursement from CPT Code 99255.  (Opp'n to Def.'s Mot. for Summ. J., Ex. 12 at 1.)  In 2002, the reimbursement for the underlying procedure, CPT Code 36489, was $108.06, while the corresponding reimbursement for a comprehensive initial consultation, CPT Code 99255, was $153.90.  (Opp'n to Def.'s Mot. for Summ. J., Exs. 1, 2.)

WIC reviewed thirty-seven claims Dr. Chen submitted for initial consultations (CPT Code 99255).  (Opp'n to Def.'s Mot. for Summ. J., Ex. 12 at 1.)  Dr. Chen appended the -25 modifier to each claim indicating a "significant, separately identifiable evaluation and management service by the same physician on the same day of the procedure or other service."  Id.  WIC requested documentation from twelve hospitals but did not request records from Dr. Chen.  Id.

7

As a result of the review, WIC reduced one service to the lowest level initial consultation code, 99251, and denied the remaining thirty-six items. Id. WIC concluded Dr. Chen's "consultations" failed to show a "significant, separately identifiable" E&M service, as defined by Medicare. (Opp'n to Def.'s Mot. for Summ. J., Ex. 12 at 2.) WIC determined the submitted documentation failed to support that referring doctors requested consultations. (Opp'n to Def.'s Mot. for Summ. J., Ex. 12 at 2.) Instead, the documentation showed referring physicians requested a catheter insertion. Id. The review describes a typical scenario:

> an order would be written asking or "consulting" Dr. Chen to insert various lines/catheters (central lines, temporary hemodialysis catheters, Swan-Ganz catheters and/or arterial lines). Dr. Chen would perform the procedure(s); write a brief progress note indicating that he had performed the procedure(s) and also dictate a "consultation" report. The "consultation" report included a description of the procedure. Dr. Chen would then submit claims for the procedure and for the consultation (with modifier -25).

(Opp'n to Def.'s Mot. for Summ. J., Ex. 12 at 1.) WIC's Summary of Findings noted that Dr. Chen's "consultation" report typically contained information readily available on the patient's chart, such as "a patient's medical problems, reason for the catheter insertion, lab results, medications, allergies, ventilator settings, and vital signs." Id.

Out of thirty-seven cases, twenty of the patients' medical records indicate that referring physicians requested a catheter placement.[5] (Id., Ex. 13 at 2.) For instance, for

---

[5] See also Opp'n to Def.'s Mot. for Summ. J., Ex. 18 at 34-35 (requesting "Dr. Chen to place line"), Ex. 19 at 25-26 (stating "please have Dr. Chen to have vas cath, Swan Ganz catheter placement."), Id. at 28-29 (requesting "consent for central line placement"), Ex. 17 at 21 (requesting Dr. Chen to insert central line"); Def.'s Mot. for Summ. J., Ex. U1 (requesting "Dr. Chen to place central line" for patient William Jones), Ex. EE1 (requesting "Dr. Chen to insert dialysis catheter" for his patient Gordon Seumlin), Ex. Q (requesting "swan Ganz placement by Dr. Chen" for patient Joseph Nixon), Ex. R (requesting "Dr. Chen for TLC insertion. Arterial line" for patient Charles Williams), Ex. S (requesting "Arterial line. Swan placement" for patient Thomas Tipton), Ex. T (requesting "Dr. Chen to see pt and place central line. Consent central line placement" for patient Vernon Spradling), Ex. BB (requesting "Call Dr Chen to insert femoral art line" for patient Gemma Pennington), Ex. GG

patient Evelyn Holt, the referring physician wrote, "[h]ave Dr. Chen insert central line." (Def.'s Mot. for Summ. J., Ex. Y1.) Additionally, Dr. Novak, the Government's expert witness, examined six medical records and concluded that those medical orders request a surgical procedure, not a consultation. (Opp'n to Def.'s Mot. for Summ. J., Ex. 10 at 2.) In six of the thirty-seven records, the referring physician specifically used the term "consult." (Def.'s Mot. for Summ. J., Exs. W, CC, DD, X, Z, V.) For example, the referring physician wrote "consult for Dr. Chen on dialysis cath placement" for patient James Tate.[6] (Def.'s Mot. for Summ. J., Ex. V1.) For the remaining eleven cases, the parties have not provided records showing how the referring physicians requested Dr. Chen's services.

     In addition to the medical records, however, the referring physicians in all thirty-seven reviewed cases state either by affidavit or in deposition testimony that he or she requested a "consult" from Dr. Chen. (Def.'s Mot. for Summ. J., Exs. L, N-JJ; Reply to Opp'n to Def.'s Mot. for Summ. J., Exs. B, C.) For example, in his deposition Dr. Makhija testified that he requested a consult from Dr. Chen. (Def.'s Mot. for Summ. J., Ex. L at 76.) In his deposition, Dr. Saxena states he requested "Dr. Chen to perform a consult on all these patients." (Def.'s Mot. for Summ. J., Ex. P at 29-30.) In her affidavit, referring physician Dr. Tseng states that she has "personal knowledge that [she] requested Dr. Chen to perform

---

(requesting "central line placement by Dr. Chen" for patient Laura Simmonds), Ex. HH (requesting "call Dr. Chen to put central line" for patient Pat Evans), Ex. II (requesting "[D]r. Chen to place catheter for dialysis" for patient Ella Bell), Ex. II (requesting " HD catheter by [D]r. Chen for patient Terry Bumpus.), Ex. II (requesting "pls have [D]r. E Chen insert dialysis catheter p consent" for patient Howard Filvelson), Ex. JJ (requesting "Dr. Chen Eugene place C2" for patient Lorene Hudson), Ex. JJ (requesting a "central line placement by Dr. Eugene Chen" for patient Gertrude Levy).

    [6] See also Def.'s Mot. for Summ. J., Ex. W (stating "consult Dr. Chen to place Swans-gans cath. Have Dr. Chen insert central line" for patient Janet Hall), Ex. CC (stating "consult Dr. Chen for insertion of dialysis catheter" for patient George Reinhart), Ex. DD (stating "central line. Dr. Chen. Consult" for patient Doris McCoig), Ex. X (stating "consult Dr. Chen for swan ganz & art-line insertion. Consult Dr. Chen for intubation for patient Bruce Dolby), Ex. Z (stating "consult/referral to Dr. Eugene Chen to place central line. Dr. Chen to place central line. Consult Dr. Chen for arterial line" for patient Shirley Harris).

9

a consultation" on patient Holt.[7]  (Def.'s Mot. for Summ. J., Ex. Y at 2.)

At their depositions, referring physicians Dr. Kermani and Dr. Saxena both stated they were not expressing an opinion as to whether Dr. Chen properly billed the insurance carrier.  (Opp'n to Def.'s Mot. for Summ. J., Ex. 17 at 21 and Ex. 20 at 31.)  Dr. Makhija denied that he was offering an opinion whether Dr. Chen's provided service satisfied the criteria for CPT Code 99255.  (Opp'n to Def.'s Mot. for Summ. J., Ex. 18 at 86-87.)  Dr. Ranga stated that although he requested Dr. Chen's services, he did not want Dr. Chen's opinion or advice.  (Opp'n to Def.'s Mot. for Summ. J., Ex. 19 at 24-25.)

Based on the alleged deficiencies noted in the WIC review, the United States brought suit in this Court alleging Dr. Chen violated the FCA, 31 U.S.C. § 3729(a)(1)-(a)(2), by knowingly presenting false claims to the Government for payment for consultation services and knowingly making and using false records to secure payment.  (Compl.)  Dr. Chen now moves for summary judgment arguing that his claims for payments on consultations were not false.  Additionally, Dr. Chen argues, that even if the billings were false, Medicare approved his billing practice and he reasonably believed that he billed appropriately.  The Government responds that referring physicians did not request consultations billed in conjunction with valid surgical procedures (primarily CPT Code 36489).  Additionally, the Government argues that payment for the procedure already includes the "consultation" services Dr. Chen provided to the patient.

By the Motion for Summary Judgment (Doc. #23), Dr. Chen argues that the discovery conducted in this case conclusively demonstrates that the thirty-seven patient consultations at issue by Plaintiff's Complaint were not fabricated consultations which were requested and performed, and after approval by Medicare, all claims were paid for each.

---

[7] Twenty-two affidavits from physicians representing twenty-five patients also state that he/she had "personal knowledge that I requested Dr. Chen to perform a consultation on [the patient]."  (Def.'s Mot. for Summ. J., Exs. Q-JJ.)

10

Plaintiff United States responds that the record developed in this case demonstrates that Dr. Chen falsely billed and was paid by Medicare hundreds of times over a four-and-one-half-year period, and that numerous issues of material fact remain which preclude resolving this case on summary judgment.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. All facts and inferences drawn must be viewed in the light most favorable to the responding party when determining whether a genuine issue of material fact exists for summary judgment purposes. Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1050 (9th Cir. 1995). After drawing inferences favorable to the respondent, summary judgment will be granted only if all reasonable inferences defeat the respondent's claims. S.E.C. v. Seaboard Corp., 677 F.2d 1297, 1298-99 (9th Cir. 1982).

The substantive law defines which facts are material. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating there is a genuine issue for trial. Id. at 250. In meeting this burden, parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

## III. DISCUSSION

Pursuant to section 3729(a)(1) of the FCA, the Government must prove three elements to establish an FCA violation: (1) the defendant presented or caused to be presented to an agent of the United States, a claim for payment; (2) the claim was false or

11

fraudulent; and (3) the defendant knew the claim was false or fraudulent.  31 U.S.C. § 3729; U.S. ex rel. Oliver v. Parsons Co., 195 F.3d 457, 461 (9th Cir. 1999).  A claim is any demand for money from the United States government.  United States v. Howell, 318 F.2d 162, 163 (9th Cir. 1963).  Defendant agrees he presented claims for payment from Medicare. (Def.'s Mot. for Summ. J. at 26.)  Consequently, only two elements remain at issue.

**A.  False or Fraudulent Claim**

Dr. Chen contends he properly billed Medicare satisfying the Medicare definition of a consult because he performed the three required elements of a consultation: 1) patient history; 2) patient exam; and 3) medical decision making.  Dr. Chen argues he fulfilled the requirements for billing CPT Code 99255 because a referring physician requested each consultation as documented in the patient's medical record, referring physicians expected Dr. Chen to perform a consultation prior to the procedure, and Dr. Chen provided consultation reports to referring physicians for use in the patients' treatments.  Dr. Chen also argues Medicare allows physicians to bill consultations using the same diagnosis code as the procedure and the consultation can be related to the procedure.  According to Dr. Chen, his consults qualified as significant and separately identifiable services because he did more during his consultation than the normal requirements for a line placement.  Therefore, Dr. Chen argues he properly billed using the -25 modifier.

In response, the Government argues Dr. Chen's billings for consultations fail to meet Medicare's consultation definition because Dr. Chen billed for CPT Code 99255 and the provided service did not satisfy that code's definition, and Dr. Chen appended the -25 modifier, defined as a "significant, separately identifiable evaluation and management service," and his service failed to meet that definition.  The Government argues that Dr. Chen's level of service did not meet the Medicare definition of a consultation as presented in Medicare manuals, bulletins, and newsletters.  The Government argues that the service Dr. Chen provided lacked several required elements to qualify as a consultation:  1) the referring

physician did not request the consultation; 2) the patient's record does not document the consultation request; 3) the referring physician was not seeking Dr. Chen's "advice or opinion;" and 4) physicians did not intend to use the results in management of their patient's condition.  Additionally, the Government alleges a pattern of double billing, first billing for the procedure (CPT Code 36489, placement of a central venous catheter) and then billing for an initial inpatient consultation (CPT Code 99255).  The Government argues billing for both of these codes double bills because both codes include the elements of a consultation.

As in Oliver v. Parsons Co., "this case involves regulations that, while unquestionably technical and complex, are not discretionary.  Their meaning is ultimately the subject of judicial interpretation, and . . . compliance with these regulations, as interpreted by this court, . . . determines whether [Dr. Chen's billing practices] resulted in the submission of a 'false claim' under the Act." 195 F.3d at 463; see also Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944) (holding that the interpretations and opinions of an agency administering an act, while not controlling, "constitute a body of experience and informed judgment . . . .  The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade . . . ."); Cmty. Hosp. of Monterey Peninsula v. Thompson, 323 F.3d 782, 791-92 (9th Cir. 2003) (giving Skidmore deference to Medicare's interpretation of regulations regarding reimbursement.)  The Medicare regulations though technical, complex and numerous, are unambiguous in their requirements for billing initial consultations and appending the -25 modifier as further explained through the Medicare manuals, bulletins, and newsletters.

Viewing the evidence in a light most favorable to the non-moving party, a reasonable jury could find that referring physicians did not request consultations or that Dr. Chen did not perform separately identifiable services and therefore Dr. Chen's billings were

13

false within the FCA's meaning. In the majority of the medical records, referring physicians asked Dr. Chen to insert a catheter or perform a line placement but did not request a consultation. (Opp'n to Def.'s Mot. for Summ. J., Ex. 13 at 2.) Although every referring doctor has testified that he requested a "consultation," none has testified that he requested a consultation as defined by Medicare supporting Dr. Chen's billing of CPT Code 99255. (Def.'s Mot for Summ. J., Exs. Q-JJ; Opp'n to Def.'s Mot for Summ. J., Ex. 17 at 21, Ex. 20 at 31, and Ex. 18 at 86-87.) A reasonable jury could find the referring doctors did not seek Dr. Chen's opinion or advice because they already determined that the patient needed a catheter or line placement. Additionally, to qualify as a Code 99255 consult, the referring physicians must intend to use the opinion or advice in managing the patient's condition, however, WIC noted in its review that Dr. Chen did not prepare several "consultation reports" until many days after he performed the procedure.

Furthermore, WIC found that Dr. Chen's consults did not meet the criteria for significant and separately identifiable services to qualify for the -25 modifier. A reasonable jury could find the services Dr. Chen performed - patient history, patient exam, and medical decision making - were the same services Dr. Chen performed in conjunction with the procedure, and thus could find Dr. Chen double billed for his services.

**B. Knowingly False or Fraudulent Charges**

Dr. Chen argues that even if his billings were false, he did not knowingly falsely bill because Medicare billing requirements are confusing. Dr. Chen asserts he made "reasonable interpretations" of Medicare billing codes and he reasonably believed his billing practices were correct. As evidence of his lack of knowledge, Dr. Chen notes Medicare reviewed his billings three times and each time Medicare paid for the questioned consultations. Dr. Chen argues this led him to believe that his billing practices were correct. Further, he argues he relied on these audits and continued his billing practices based on explicit instructions from the Medicare Hearing Officer.

The Government responds that under Medicare, participants have a duty to familiarize themselves with the legal requirements for payment. Additionally, the Government contends Dr. Chen actually knew his billings were false because he understood the significance of billing with modifiers. Dr. Chen had billed with other modifiers and had switched to the -25 modifier when Medicare rejected payment for the consultation. Further, the Government argues Dr. Chen used different diagnosis codes for the procedure and the consultation because he knew that using different diagnosis codes would portray the consultation as "separately identifiable." The also Government argues that Dr. Chen deliberately remained ignorant of Medicare rules. The Government argues that Dr. Chen possessed the appropriate billing information, but chose to ignore Medicare's billing requirements.

The FCA provides that a person acts "knowing" or "knowingly" when that person, with respect to information (1) has actual knowledge of the information, (2) acts in deliberate ignorance of the truth or falsity of the information, or (3) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b). No proof of specific intent to defraud is required. Id. The requisite intent is the "knowing presentation of what is known to be false." United States v. Mackby, 261 F.3d 821, 828 (9th Cir. 2001).

Congress amended the FCA to include acting in "deliberate ignorance of the truth or falsity" specifically to address "'the problem of the "ostrich-like" refusal to learn of information which an individual, in the exercise of prudent judgment, had reason to know.'" UMC Elecs. Co. v. United States, 43 Fed. Cl. 776, 793 (Ct. Cl. 1999) (quoting S. Rep. No. 99-345 at 21 (1986), reprinted in U.S.C.C.A.N. 5266, 5286). The reckless disregard standard addresses the refusal to learn of information which an individual, in the exercise of prudent judgment, should have discovered. Crane Helicopter Servs., Inc. v. United States, 45 Fed. Cl. 410, 433 (Fed. Cl. 1999) ("[T]he statute covers not just those who set out to defraud the government, but also those who ignore the obvious warning signs.").

"Proof of one's mistakes or inabilities is not evidence that one is a cheat." Wang ex rel. United States v. FMC Corp., 975 F.2d 1412, 1421 (9th Cir. 1992). The FCA does "'not punish honest mistakes or incorrect claims submitted through mere negligence.'" United States ex rel. Hochman v. Nackman, 145 F.3d 1069, 1073 (9th Cir. 1998) (quoting S. Rep. No. 99-345 at 7 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5272). Thus, "[a] contractor relying on a good faith interpretation of a regulation is not subject to liability, not because his or her interpretation was correct or 'reasonable' but because the good faith nature of his or her action forecloses the possibility that the scienter requirement is met." Oliver, 195 F.3d at 460.

However, participants in the Medicare program have a "duty to familiarize [themselves] with the legal requirements for cost reimbursement." Heckler v. Cmty Health Servs., 467 U.S. 51, 64 (1984). "Protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law," therefore Medicare holds health providers "to the most demanding standards in [their] quest for public funds." Id. at 63. Accordingly, at least one court has found liability under the FCA where the dispute was between an official agency interpretation and the claimant's "plainly inconsistent reading of the law." Visiting Nurse Ass'n of Brooklyn v. Thompson, 378 F. Supp. 2d 75, 96-97 (E.D.N.Y. 2004). The court reasoned that reliance on any reasonable interpretation a claimant might prefer would render the regulations "toothless overnight" and therefore where the Government has issued an interpretation of an ambiguous regulation, the claimant's contrary interpretation is unreasonable. Id.

Interpreting all facts in a light most favorable to Plaintiff, the non-moving party, a reasonable juror could find Dr. Chen had actual knowledge of the falsity of his billings or that Dr. Chen acted in reckless disregard of available information when he falsely billed Medicare for consultations. First, a reasonable jury could find that a plain reading of Medicare regulations combined with the Medicare manuals, bulletins, and newsletters

resolving any ambiguities in those regulations is inconsistent with Dr. Chen's interpretation of Medicare's rules and regulations. For example, a reasonable jury could find Dr. Chen's practice of billing for a consultation for the same patient on the same day as he performed the catheterization is directly contrary to the Global Surgical Policy designed to preclude a service provider from billing separately for both the procedure and the E&M services normally performed in conjunction with the procedure.

Furthermore, a reasonable jury could find Dr. Chen's use of modifiers and diagnosis codes demonstrates Dr. Chen knew his billings were false. Under special circumstances, Medicare allows use of the -25 modifier specifically to override the automatic denial of consultation claims by the same physician, on the same patient, on the same day as a procedure. A reasonable jury could determine Dr. Chen used this modifier to circumvent Medicare's restriction, requiring him to acquaint himself with both the restriction and the modifiers. Dr. Chen's use of different diagnosis codes also raises a question of fact as to whether Dr. Chen portrayed the consultation as unrelated to the procedure to obtain payment for both the procedure and the consultation even though he knew under the Global Surgical Policy that he was not entitled to payment for both services.

Finally, the Medicare reimbursement for the consultation was greater than the reimbursement for the requested procedure. (Opp'n to Def.'s Mot. for Summ. J., Exs. 1, 2.) In addition to obtaining greater reimbursement for the consultations than the actual procedure, Dr. Chen usually billed the highest level consultation code yielding the greatest reimbursement. Id. A reasonable jury could find this pattern represented a reckless disregard of Medicare rules and regulations designed to maximize payments to Dr. Chen. Because the Government has raised genuine issues of material fact that Dr. Chen violated the FCA, the Court will deny Defendant Dr. Chen's motion for summary judgment.

\\\
\\\

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendant Eugene Chen's Motion for Summary Judgment (Doc. #23) is hereby DENIED.

DATED: May 30, 2006

_____
PHILIP M. PRO
Chief United States District Judge

**IV. CONCLUSION**

IT IS THEREFORE ORDERED that Defendant Eugene Chen's Motion for Summary Judgment (Doc. #23) is hereby DENIED.

DATED: May 30, 2006

_____
PHILIP M. PRO
Chief United States District Judge